

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

NOV X 9 2007
NOV X 9 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
)
    Plaintiffs, )
)
    v. )   C  07cv6390
)    JUDGE LEFKOW
M.J.C. DEMOLITION, INC., )    MAG. JUDGE NOLAN
)
    Defendant. )

## COMPLAINT

Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Funds"), and plaintiff James S. Jorgensen ("Jorgensen"), Administrator of the Funds, by their undersigned attorneys, and for their Complaint against Defendant M.J.C. Demolition, Inc., as follows:

### COUNT I

### (Failure To Pay Employee Benefit Contributions)

1.     Jurisdiction is based on Sections 502(e)(1) and (2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1132(e)(1) and (2); Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a); and 28 U.S.C. §1331.

2.     Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391(a) and (b).

3.     The Funds are multiemployer benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). The Funds have offices, conduct business and administer the plans within this District. Jorgensen is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General Laborers' District Council of

Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

4.    Defendant M.J.C. Demolition, Inc. (hereinafter "The Company"), is an Illinois corporation in good standing.  The Company does business within this District and is an Employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of LMRA, 29 U.S.C. §185(a).

5.    The Union is a labor organization within the meaning of 29 U.S.C. §185(a).  The Union and the Company are parties to a collective bargaining agreement ("Agreement").  (A copy of the "short form" Agreement entered into between the Union and the Company, which Agreement adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit A.)

6.    The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation & Education Trust ("LECET"), [the Contractors' Association of Will and Grundy Counties (the "Will County Fund"), the Concrete Contractors' Association of Greater Chicago ("CCA"), and the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), to act as an agent in the collection of contributions due to those funds.

7.    The Agreement obligates the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to the Funds remitted

2

on behalf of each covered employee.

8.     The Agreement further obligates the Company to cooperate with auditors designated by the Funds in conducting payroll audits to assure that all required contributions have been made to the Funds.

9.     The Agreement further obligates the Company to procure, carry and maintain a surety bond to guarantee payment of wages, Pension and Welfare contributions for the duration of the Agreement.

10.     Notwithstanding the obligations imposed by the Agreement, the Company has:

(a)     failed to report and pay contributions owed to plaintiff Laborers' Pension Fund for the period October 1, 2003 through December 21, 2006, as reflected in reports by the Funds' auditors, which is attached hereto as Exhibit B, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries; and

(b)     failed to report all contributions owed to Plaintiff Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period October 1, 2003 through December 21, 2006, as reflected in reports by the Funds' auditors and failed to report and pay contributions owed to plaintiff, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries; and

(c)     failed to report all contributions owed to the Plaintiff Training Fund for the period October 1, 2003 through December 21, 2006, as reflected in reports by the Funds' auditors and failed to report and pay all contributions owed to Laborers' Training Fund from, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries.

(d)     failed to maintain a surety bond to guarantee the payment of wages, Pension and Welfare contributions, and;

(e)     failed to pay past due penalties owed for contributions not paid timely.

11.     Despite demand duly made, the Company has not paid the required contributions or other sums due.

12.    All conditions precedent to requiring contributions and reports to the Funds have been met.

13.    The Company's actions in failing to make timely reports and contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

14.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), and the terms of the Funds' Trust Agreements, the Company is liable to the Funds for unpaid contributions and related amounts, as well as interest and liquidated damages on the unpaid contributions, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant M.J.C.Demolition, Inc., for the amounts of contributions owed to date together with all accrued delinquencies after suit, interest, liquidated damages, attorneys' fees and costs, directing the Company to obtain and maintain a surety bond to guarantee payment of wages, Pension and Welfare contributions as required by the Agreement, and an order directing Defendant to timely submit reports and upon demand by Plaintiffs submit to an audit, and any other legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Pay Union Dues)

15.    Plaintiff realleges paragraphs 1 through 9 of Count I.

16.    Pursuant to the Agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been deducted from the wages of covered employees.

17.    Notwithstanding the obligations imposed by the Agreement, the Company has failed to withhold and/or to report to and forward the union dues deducted or the Union dues that should have been deducted from the wages of employees for the period October 1, 2003 through December 21, 2006, thereby depriving the Union of income.

18.    Pursuant to the Agreement, the Company is liable to the Fund for the unpaid union dues, as well as reasonable attorneys' fees, as the Union's collection agent, and costs, and such other legal and equitable relief as the Court deems appropriate.

19.    The Company's actions have violated and are violating Section 301(a) of the LMRA,

29 U.S.C. § 185(a).

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant, M.J. C. Demolition, Inc., for the amount of the union dues owed to date together with all attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

By: _____
Attorneys for Plaintiff

Wesley Kennedy
Karen I. Engelhardt
Angie Cowan
Josiah Groff
ALLISON, SLUTSKY & KENNEDY, P.C.
230 West Monroe Street Suite 2600
Chicago, Illinois 60606
(312) 364-9400

November 8, 2007

# A G R E E M E N T

It is hereby agreed by and between Chicago Building Wreckers Association and all others who sign a Memorandum of Agreement assenting to be bound to this Agreement (herein called the "Employer") and LABORERS' LOCAL NO. 225 and the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (herein called the "Union"), and encompassing the geographical area of the Counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois. Employer hereby recognizes, during the term of this Agreement, LABORERS' LOCAL NO. 225 and the LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY as the sole and exclusive bargaining agent for all laborers employed by Employer performing the work set forth herein with respect to their wages, hours of work, fringe benefits, and other terms and conditions of employment as set forth in this Agreement.

The parties agree that the effective date of this Agreement is July 15, 1991, and it shall remain in full force and effect until July 14, 1995. If either party wishes to modify or terminate this Agreement, it shall serve notice in writing by certified mail of such request on the other party not less than sixty (60) days prior to July 14, 1995. In the absence of the service of such notice, this Agreement shall automatically renew itself for an additional one year period.

In the absence of service of notice upon the Union by an Employer who is not a member of the Chicago Building Wreckers Association and who is a signatory to a Memorandum assenting to be bound to this Agreement said Employer shall automatically be bound to the terms of the newly negotiated or renewed Chicago Building Wreckers' Association Agreement for the life of that contract.

## 1. Scope of Work

The scope of work covered by this Agreement is complete demolition, dismantling and wrecking as defined herein, excluding work historically performed by operating engineers or teamsters under a collective bargaining agreement with those Unions.

### I) Complete Demolition

The pay rates as set forth in Paragraph 4(a) shall apply to the following work:

The complete demolition or dismantling of buildings and all structures in their entirety and removed to the grade or basement level, and the work incidental thereto which includes breaking away roof materials, beams of all kinds, with use of cutting or other wrecking tools as necessary; Burning or otherwise cutting all steel structural beams; Breaking away, brick, wood or metal fixtures, salvage or scrap; All hooking on and signaling when materials for salvage, scrap or debris are removed by crane or derrick; All

**Exhibit A**

loading of materials carried away from the site of complete demolition; All clean-up and removal of debris using hand tools or bobcats, back-filling and landscaping of the site of totally demolished structure.  Such work is covered by the Complete Demolition rate as set forth herein.

This agreement excludes the cleaning and removal of bricks provided the person performing the brick cleaning performs no other work on the job site covered by this Agreement.

II)  **Wrecking (i.e.) Interior or Strip Out Work**

The definition of the term "wrecking" as set forth in the Agreement between the Laborers' District Council and the Builders' Association shall apply to all other wrecking work.  Said work is defined as:

Where a building is only partially wrecked and parts torn down for the purpose of building additions, alterations, remodeling or repairing same.

The pay rates as set out in Section 4(b) of this Agreement shall apply except for the following specific exemptions and no others which are to be narrowly construed and the complete demolition rate set forth in Paragraph 4(a) shall apply to:

a.  the total demolition of a building including where the facade remains;

b.  when an entire story of a building is totally and completely removed, however, any work inside the remaining portion of the building shall be at the interior wrecking rate;

c.  when a party wall is left;

d.  the dismantlement or removal of boilers, water towers, fire escapes and stacks;

e.  removal of mechanical equipment or devices from industrial plants that does not involve removal or demolition of partitions, walls, ceilings or floors.

The removal of partitions, walls, ceilings and floors shall be paid at the interior wrecking rate.  An industrial plant is defined as a factory or warehouse only and shall not be applicable within the territorial jurisdiction of Locals 4 and 6 of the Laborers' District Council of Chicago and Vicinity that extend north to Division Street, south to Cermak Road, west to Racine, and east to Lake Michigan.

2

### III. Asbestos Work

Asbestos work of any kind will be performed under the agreement between the Laborers' District Council and the Illinois Regional Environmental Contractors' Association (IRECA). Any amendments or modifications to the proposed IRECA contract will be incorporated herein and automatically apply to this Wrecking Agreement between Brandenburg and Laborers' Local 225. All other references to asbestos work where in conflict with the IRECA Agreement are deleted from this agreement and all asbestos removal, abatement or subcontracting of such work will be conducted under the wages, benefits and working conditions of the IRECA Asbestos Contract.

The Employer must identify its asbestos workers and provide the Union with the names and addresses of those employees or subcontractors.

### 2. EQUAL OPPORTUNITY

The parties agree that employees will not be discriminated against because of race, creed, religion, color, age, sex or national origin.

### 3. TRAINEE/HELPER

The Trainee/Helper rate shall be Sixty-six and two-third (66 2/3%) Percent of the base rate rounded up to the nearest penny plus full benefit contributions to the Laborers' Health and Welfare and Pension Plans. No present Laborer employee shall be replaced by a Trainee/Helper.

The Trainee/Helper contributions shall be Ten ($.10) Cents per hour for each hour worked from June 1, 1991 to May 31, 1992 for all Employees covered under this Agreement to the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund payable to the Training Fund or a designated appointee at the end of each month and such additional sums as the Union may designate in its sole discretion from its total economic package on June 1, 1992, June 1, 1993 and June 1, 1994 under this Agreement. The terms of the trust establishing the Fund are incorporated by reference herein and all terms regarding auditing, assessments, non-payments and grace periods as set out in the Collective Bargaining Agreement regarding payment of Welfare and Pension Fund contributions shall apply as if fully set forth herein for the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund.

Employers with ten (10) or more Laborers will be allowed one (1) Trainee/Helper for every multiple of ten (10) Laborers per year. Said Trainee/Helper may work only 400 hours in the

3

construction industry which shall be cumulative among signatory Employers at the Sixty-six and two-thirds (66 2/3%) Percent rate after which time the Employee will become a full-rate Laborer, i.e. ten (10) Laborers - one (1) Trainee/Helper, twenty (20) Laborers - two (2) Trainee/Helpers, thirty (30) Laborers - three (3) Trainee/Helpers, etc.

Employers with three (3) to nine (9) Laborers will be allowed one (1) Trainee/Helper per year, who shall work 200 hours at the Trainee/Helper rate. Thereafter the Employee shall be compensated at the full Laborers' rate. If a Trainee is employed for two (2) weeks or more by an Employer and then leaves such employment, that shall constitute one (1) Trainee/Helper for the year for that Employer.

All Trainee/Helpers must be registered with Local 225 and the Training Fund. Upon inquiry by the Employers at time of registration the Training Fund shall notify Employer of the number of hours accumulated by the Trainee/Helper in the industry. Any Trainee/Helper not registered shall receive the full Laborers' rate. Violation of the above-stated ratios of Trainee/Helpers to Laborers will result in the employers' forfeiture of the right to utilize Trainee/Helpers for the remainder of the Agreement.

All Health and Welfare, Pension, Industry Advancement and Trainee/Helper Fund contributions will commence immediately upon employment. Union affiliation will be required after seven (7) days of employment.

### a. Reporting

Employer shall report monthly to the Training Fund the job locations and pay rates received for trainees indicating which projects were total demolition and which were interior or strip out wrecking projects.

The Training Fund shall verify the nature of employment and wage rate with the trainee-employees.

### 4. RATE OF PAY

#### A. Total Demolition

July 15, 1991 through July 14, 1992. Wages:
Total Demolition Laborers                                  $11.70

July 15, 1992 through July 14, 1993.
$1.05 per hour to be allocated by the Union in its sole discretion pursuant to the terms of the Agreement between wages, fringes and training.

4

<u>July 15, 1993 through July 14, 1994.</u>
$1.05 per hour to be allocated by the Union in its sole discretion pursuant to the terms of the Agreement between wages, fringes and training.

<u>July 15, 1994 through July 14, 1995.</u>
$1.10 per hour to be allocated by the Union in its sole discretion pursuant to the terms of the Agreement between wages, fringes and training.

Laborers performing work of burners, wallmen, power tool and equipment operators shall receive an additional fifty cents ($.50) per hour added to the base wage rate.

**B.    <u>Wrecking</u>**

The rate of pay for interior wrecking work is as follows, subject to the $1.00 per hour reduction provided in Section 4, Paragraph d. below:

<u>July 15, 1991 through July 14, 1992. Wages:</u>
Wrecking, interior or Strip Out Laborers        $18.00

<u>July 15, 1992 through July 14, 1993.</u>
$1.05 per hour to be allocated by the Union in its sole discretion pursuant to the terms of the Agreement between wages, fringes and training.

<u>July 15, 1993 through July 14, 1994.</u>
$1.05 per hour to be allocated by the Union in its sole discretion pursuant to the terms of the Agreement between wages, fringes and training.

<u>July 15, 1994 through July 14, 1995.</u>
$1.10 per hour to be allocated by the Union in its sole discretion pursuant to the terms of the Agreement between wages, fringes and training.

**C.    <u>Asbestos Work</u>**

That any laborer performing asbestos work of any kind shall be paid the MARBA rate effective June 1, 1991 of $18.00 per hour plus a one dollar per hour premium, i.e., $19.00 per hour plus fringes, plus MARBA increases in each succeeding year, 1992-1993, 1993-94, 1994-95 as follows:

<u>July 15, 1991 through July 14, 1992. Wages:</u>
Asbestos Laborers
                                        $19.00

5

**July 15, 1992 through July 14, 1993.**
$1.05 per hour to be allocated by the Union in its sole discretion pursuant to the terms of the Agreement between wages, fringes and training.

**July 15, 1993 through July 14, 1994.**
$1.05 per hour to be allocated by the Union in its sole discretion pursuant to the terms of the Agreement between wages, fringes and training.

**July 15, 1994 through July 14, 1995.**
$1.10 per hour to be allocated by the Union in its sole discretion pursuant to the terms of the Agreement wages, fringes and training.

D.    **Insurance Reduction**

Employers covered by this Agreement shall be entitled to a One Dollar ($1.00) per hour reduction in the above rates, except the asbestos premium, provided the Employer submits to the District Council at the outset of this Agreement and each year thereafter its Contractor's General Liability Insurance Policy with an insurance carrier recognized by the State of Illinois Department of Insurance which provides a cost of insurance over and above a general building contractor's insurance costs of at least twenty-five percent (25%) or more which, on an appropriate comparison demonstrates sufficient basis to justify a One Dollar ($1.00) per hour reduction in the wage rate. Failure to furnish said insurance policy will require payment at the wage rate as stated above.

5.    **Holidays and Holiday Pay**

Holidays are:

New Year's Day                  Labor Day
Memorial Day                    Thanksgiving Day
Independence Day                Christmas Day

or the day on which such holidays are actually celebrated.

Double time shall be paid for all work performed on a holiday or the day on which such holiday is celebrated.

6.    **Pay Period**

A pay period is one week in length. Payday shall be on Friday of each week.

7.    **Overtime**

The overtime rate per hour is one and one-half (1-1/2) times the straight time hourly rate per hour and shall be paid to all

6

laborers and trainees performing work in excess of forty (40) hours per week. Double time shall be paid for all work performed on holidays as set forth above.

**8.    Welfare Contributions**

Employer agrees to contribute and to be bound to the terms of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity Trust Fund (hereafter Welfare Fund) at the rate of $2.22 per hour for each worked by laborers and trainees covered under this Agreement for the period July 15, 1991 through July 15, 1992 and such additional sums per hour as the Union may designate in its sole discretion from its total economic package on July 15, 1992, July 15, 1993 and July 15, 1994 under paragraph 4 of this Agreement.

**9.    Pension Fund**

Employer agrees to contribute and to be bound to the terms of the Laborers' Pension Fund, located at 1515 S. Harlem, Forest Park, Illinois (hereafter Pension Fund) at the rate of $1.00 per hour for each hour worked by all laborers and trainees covered under this Agreement for the period July 14, 1991 through July 13, 1992 and such additional sums per hour as the Union may designate in its sole discretion from its total economic package on July 15, 1992, July 15, 1993 and July 15, 1994 under paragraph 4 of this Agreement.

**10.   Training Fund**

Employer agrees to contribute and to make contributions to the Laborers' Training Fund and for each hour worked by laborers and trainees covered under this Agreement in the following amounts: July 15, 1991 to July 14, 1992 $.10 per hour and such additional sums per hour as the Union may designate in its sole discretion from its total economic package on July 15, 1992, July 15, 1993 and July 15, 1994 under paragraph 4 of this Agreement.

That the Agreements and Declarations of Trust and all Amendments thereto establishing the Welfare, Pension and Training Funds are incorporated by reference herein and made a part hereof.

**11.   Union Security**

Employer agrees that all its labor employees and trainees performing work under this Agreement shall as a condition of employment become and maintain membership in good standing of the Union after the seventh (7th) day of employment.

Good standing shall mean payment of the initiation fee and both working and non-working dues that are uniformly required as a condition of acquiring or retaining membership in a Local Union.

7

## 12. Union Representative

The duly authorized representative of employees, if having in his possession proper credentials, shall be permitted to visit jobs during working hours, to interview the workmen, but he shall make every reasonable effort not to interfere with the progress of the work and to obtain from Employer the names, addresses and social security numbers of all new hires which shall not be withheld and such other laborers employed by the Employer.

Employer agrees that upon receipt of an executed authorization form from the employee it will deduct from wages covered by this Agreement, working dues in the amount of Twenty Cents ($.20) per hour for each hour worked by laborers and trainees employed by it under this Agreement. Employer shall remit that amount monthly to Union as its offices designated to Employer by Union the sums so deducted together with an accurate list of employees from whose wages said dues were deducted and the amount applicable to each employee not later than the 15th day of the month following the month for which said deductions were paid. Said deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended.

Employer also agrees to deduct from the net earnings payable to an employee covered by this Agreement, initiation fees and quarterly Union dues insofar as permitted by state and federal laws upon receipt and accordance with a duly executed authorization form from the employee, which said authorization form shall not be irrevocable for a period more than one (1) year or beyond the termination date of this Agreement, whichever occurs sooner.

It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended; and that each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of this Agreement, whichever occurs sooner.

Union agrees that it will indemnify and hold harmless Employer from any and all claims, suits, causes of action, or otherwise, as regards the creation and administration of the dues check-off established by this Section and such indemnity and agreement to hold harmless shall include the payment of costs and attorneys' fees on behalf of the beneficiaries of such indemnity.

## 13. No-Strike - No-Lockout

Union agrees that there shall be no strike or picket against the Employer during the life of this Agreement. Employer agrees

8

that it shall not lockout employees during the life of this Agreement for any reason.

Union retains the right to remove its members and strike and picket for non-payment or underpayment of wages by Employer. Or to strike and picket for non-payment of health and welfare, pension, training or dues deductions delinquent by the Employer in excess of sixty (60) days, provided the Union gives the Employer forty-eight (48) hours written notice of delinquency.

Parties agree to arbitrate any disputes or grievances arising as to the meaning or interpretation of this Agreement except non-payment of wages and benefits with the Illinois Department of Conciliation and Mediation or similar arbitration association.

## 14. Subcontractors

If the Employer should contract or subcontract any of the aforesaid works falling within the trade jurisdiction of the Union as set forth herein, said Employer shall contract or subcontract such work only to firms that observe the same wages, and comparable health and welfare and pension benefits. This shall not be interpreted as requiring contributions by a subcontractor to the Laborer's Welfare and Pension Fund. Violation of any provision of this paragraph will give the Union the right to seek appropriate damage at law.

## 15. Savings and Separability

Nothing contained in this Agreement is intended to violate any Federal, State or local law, rule or regulation made pursuant thereto.

If any part of this agreement is construed by a court or board of competent jurisdiction to be in such violation, then that part shall be null and void, but the remainder of the Agreement shall continue in full force and effect and the parties shall immediately commence negotiations for a new provision or provisions to replace that portion which was declared legally defective.

## 16. Most Favored Nation Clause

Should the Union enter into an agreement with any other employer covering work which is the same as that covered by this agreement and should said agreement contain terms and conditions more favorable to the employer than the terms of this agreement, this agreement shall immediately be amended so as to provide the more favorable terms and conditions.

Notwithstanding the above, single project and/or International agreements shall be allowed under the following conditions. The Union shall give notice to Employers bound by this agreement of any

9

project agreements sought on a National, International or Local Union level that are to be performed within the geographic jurisdiction of this contract and the Union shall make such terms regarding wages, hours and working conditions to be applied for said specific project or job agreement available to all signatory Employers for that project in order to permit signatory Employers a fair and competitive opportunity to compete for such projects.

That any amendments or modifications of this Agreement shall be in writing and signed by all parties hereto.

## Approvals

IN WITNESS WHEREOF, and in consideration of the mutual promises of the parties hereto, and other good and valuable consideration, the parties have hereunto affixed their signatures this 15th day of July, 1991.

BY: _____

COMPANY:

_M.J.C. DEMOLITION, INC._

7823   S. WESTERN AV
**Address**

CH  IL   60620
**City, State and Zip**

XR   957   9674
**Telephone Number**

LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

_____

_____

LABORERS' LOCAL 225

_____

10

## MEMORANDUM OF AGREEMENT

M.K. DEMOLITION INC       , Employer hereby agrees, through this
Memorandum of Agreement, to assent to be bound to the terms of the
Chicago Building Wreckers' Association Agreement for the period
July 15, 1991 through July 14, 1995. The terms of said agreement
are as follows.

An agreement has been reached between the Laborers' District
Council of Chicago and Vicinity, representing its various
bargaining units and Laborers' Local 225, and the Chicago Building
Wreckers' Association on behalf of the Employers it represents, and
agrees as follows:

1. The duration of this agreement will be from July 15, 1991
through July 14, 1995.

2. The economic package shall be as follows:

July 15, 1991 through July 14, 1992. Wages: a Seventy-Five
($.75) Cent per hour across the board wage increase to all
employees in all job classifications covered under this Agreement.

| | |
|---|---|
| Pension | $1.00 per hour for all hours worked |
| Welfare | $2.22 per hour for all hours worked |
| Training Fund | $ .10 per hour for all hours worked |

July 15, 1992 through July 14, 1993

$1.05 per hour to be allocated by the Union in its sole
discretion pursuant to the terms of the Agreement between wages,
fringes and training.

July 15, 1993 through July 14, 1994

$1.05 per hour to be allocated by the Union in its sole
discretion pursuant to the terms of the Agreement between wages,
fringes and training.

## July 15, 1994 through July 14, 1995

$1.10 per hour to be allocated by the Union in its sole discretion pursuant to the terms of the Agreement between wages, fringes and training.

3. That the provisions regarding use of Trainees shall be amended and modified as appears in Exhibit 1, attached.

4. Asbestos work of any kind will be performed under the attached agreement proposed between the Laborers' District Council and the Illinois Regional Environmental Contractors' Association (IRECA). Any amendments or modifications to the proposed IRECA contract will be incorporated herein and automatically apply to the Chicago Building Wreckers' Agreement. All other references to asbestos work where in conflict with the IRECA Agreement or this Memorandum are deleted from the Chicago Building Wreckers' Association Agreement and all asbestos removal, abatement or subcontracting of such work will be conducted under the wages, benefits and working conditions of the IRECA Asbestos Contract.

5. Any wrecking contractor must identify its asbestos workers and provide the Union with the names and addresses of those employees or subcontractors.

6. All other existing conditions of the contract which will expire July 14, 1991 shall be revived, extended and incorporated by reference to this Agreement except as modified herein, and in the event of a conflict the terms of this Agreement shall control.

7. That any laborer performing asbestos work of any kind shall be paid the MARBA rate effective June 1, 1991 of $18.00 per hour plus a one dollar per hour premium, i.e., $19.00 per hour plus fringes, plus MARBA increases in each succeeding year, 1992-93,

1...3-94,, 1994-95. Laborer's rate on asbestos work effective July 15, 1991.

CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL
OF CHICAGO AND VICINITY,

By: _Ernest Kumerow_
Ernest Kumerow, President
and Business Manager

By: _Joseph A. Lombardo, Jr._
Joseph A. Lombardo, Jr.
Secretary-Treasurer

LABORERS' LOCAL NO. 225

By: _Daniel M. Luno_

Dated: 10-16-91

MK DEMOLITION INC
Employer

By: _Mild A. Chlb_
MICHAEL J. CHILDERS

Address 7213 S. WESTERN AV

Telephone 708 957 7671

Dated: 10/3/91

THE PENSION WELFARE FUND
RECEIVED

31 OCT 21 A9: 46

MJC DEMOLITION, INC.
CASE # CHLAB-1206-1212
ACCOUNT # 22992
OCTOBER 1, 2003 THROUGH DECEMBER 31, 2006

**Exhibit B**

# Levinson Simon & Sprung, P.C.
## Certified Public Accountants

566 W. Lake St.
Suite 3 West
Chicago, IL 60661-1414
(312) 655-0037
Fax (312) 655-9145

February 19, 2007

Trustees Laborers' Pension Fund and
Health and Welfare Department of the
Construction and General Laborers'
District Council of Chicago and Vicinity
Jean Mashos, Director
11465 Cermak Road
Westchester, Illinois 60154

Re:    MJC Demolition, Inc.
        Case # CHLAB-1206-1212
        Acct # 22992

Gentlemen:

In accordance with your instructions we have performed certain agreed upon procedures to the payroll records presented for our inspection by the above mentioned employer. The purpose of the inspection was to determine the accuracy of the employer's monthly contributions to the Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period October 1, 2003 through December 31, 2006. This agreed upon procedure engagement was performed in accordance with the standards established by the American Institute of Certified Public Accountants. The sufficiency of these procedures is solely the responsibility of the Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

Attached hereto are yearly schedules showing the detail of the under-reported hours and computation of the amounts due to the Funds. The findings consist of unreported and under-reported wages and hours of individuals on payroll doing covered work. All employees have been previously reported to the Funds. Separate summaries and schedules have been prepared according to the funds due. The contractor is delinquent to the Funds for December 2006.

Our examinations indicated that the employer owes the following amounts for the period audited, exclusive of interest.

|  |  | Amount Due |
|---|---|---|
| Welfare |  | $ 1,492.00 |
| Pension |  | 968.00 |
| Training |  | 34.00 |
| LDCLMCC |  | 4.80 |
| LECET |  | 2.00 |
| Dues |  | 53.81 |
|  | Total | $ 2,554.61 |

Trustees Laborers' Pension Fund and
Health and Welfare Department of the
Construction and General Laborers'
District Council of Chicago and Vicinity
February 19, 2007
Page Two
Case # CHLAB-1206-1212

We were not engaged to, and did not, perform an examination, the objective of which would be
the expression of an opinion on the accompanying report. Accordingly, we do not express such
an opinion. Had we performed additional procedures, other matters might have come to our
attention that would have been reported to you.

We shall be pleased to furnish any additional information desired and have attached our bill for
services.

Very truly yours,

LEVINSON SIMON & SPRUNG P.C.
Howard B. Levinson, CPA, MBA

HBL/lab

Enclosures

**Levinson Simon & Sprung, P.C.**

Reconciliation of Differences Per Year

Page 1

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS

M J C DEMOLITION, INC.

Case #: ChLab-1208-1212

Audit Period: 10/1/2003 thru 12/31/2006

Fiscal Year End: May

## ALL FUNDS EXCEPT DUES, LDCLMCC AND LECET

| Fiscal Year Ending | MAY 2007 | Total |
|---|---|---|
| Hours Not Reported | 200.00 | 200.00 |
| **Dollar Amount Due** | | |
| Welfare Fund | 1,492.00 | 1,492.00 |
| Pension Fund | 968.00 | 968.00 |
| Training Fund | 34.00 | 34.00 |
| **Total** | **2,494.00** | **2,494.00** |

Liquidated Damages 4,834.57

Dues Penalties / Shortages 0.00

Audit Fee 827.50

**Total Amount Due** 8,156.07

Manager: Belar, Lela

Auditor: Collins, Latonya

Levinson Simon & Sprung, P.C.

Detail Report

Report Date: 2/19/2007

Page 2

SION AND WELFARE FUNDS OF CHICAGO LABORERS
C DEMOLITION, INC.
Case #: ChLab-1206-1212
Contact: CDCA & *CDCA
Year Ended: May, 2007

Contributions computed by Amount per Hour

| SSN | Name | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 22140 | *J. TERRY | 40.00 | | | | | | 160.00 | | | | | | 200.00 |
| | Total Hours | 40.00 | | | | | | 160.00 | | | | | | 200.00 |

e Table

| | | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| are Fund | $7.4600 | 298.40 | | | | | | 1,193.60 | | | | | | 1,492.00 |
| ion Fund | $4.8400 | 193.60 | | | | | | 774.40 | | | | | | 968.00 |
| ion Fund | $0.1700 | 6.80 | | | | | | 27.20 | | | | | | 34.00 |
| uing Fund | | | | | | | | | | | | | | |
| | | 498.80 | | | | | | 1,995.20 | | | | | | 2,494.00 |

Levinson Simon & Sprung, P.C.
Reconciliation of Differences Per Year

'ENSION AND WELFARE FUNDS OF CHICAGO LABORERS
A J C DEMOLITION, INC.
Case #: ChLab-1206-1212
Audit Period: 10/1/2003 thru 12/31/2006
Fiscal Year End: May

## DUES, LDCLMCC AND LECET ONLY

| Fiscal Year Ending | MAY 2007 | MAY 2006 | MAY 2005 | MAY 2004 | Total |
|---|---|---|---|---|---|
| Dollars Not Reported | 160.00 | 1,842.62 | 402.00 | 670.00 | 3,074.62 |
| Hours Not Reported | 0.00 | 40.00 | 0.00 | 0.00 | 40.00 |
| **Dollar Amount Due** | | | | | |
| LDCLMCC | 0.00 | 4.80 | 0.00 | 0.00 | 4.80 |
| LECET | 0.00 | 2.00 | 0.00 | 0.00 | 2.00 |
| Dues | 2.80 | 32.25 | 7.04 | 11.73 | 53.81 |
| Dues | | | | 11.73 | 60.61 |
| **Total** | **2.80** | **39.05** | **7.04** | **11.73** | |

Dues Penalties / Shortages    0.00

Total Amount Due    60.61

Manager: Behr, Leia
Auditor: Collins, Lakonya

# Levinson Simon & Sprung, P.C.

## Detail Report

### Report Date: 2/19/2007

ION AND WELFARE FUNDS OF CHICAGO LABORERS
DEMOLITION, INC.
Case #: ChLab-1206-1212
Contract: CDCA & *CDCA

Year Ended: May, 2004

Contributions computed as Percentage of Dollars Paid

| SN | Name | JUN 2003 | JUL 2003 | AUG 2003 | SEP 2003 | OCT 2003 | NOV 2003 | DEC 2003 | JAN 2004 | FEB 2004 | MAR 2004 | APR 2004 | MAY 2004 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2-2140 | *JACKSON, TERRY | | | | | | | | | | 268.00 | 402.00 | | 670.00 |
| | Total Dollars Paid | | | | | | | | | | 268.00 | 402.00 | | 670.00 |
| | | | | | | | | | | | | | | |
| | 1.7500% | | | | | | | | | | 4.69 | 7.04 | | 11.73 |
| | | | | | | | | | | | 4.69 | 7.04 | | 11.73 |

Levinson Simon & Sprung, P.C.

**Detail Report**

**Report Date: 2/19/2007**

ON AND WELFARE FUNDS OF CHICAGO LABORERS
DEMOLITION, INC.
Case #: ChLab-1206-1212
Contact: CDCA & *CDCA

Year Ended: May, 2005

Contributions computed as Percentage of Dollars Paid

| SN | Name | JUN 2004 | JUL 2004 | AUG 2004 | SEP 2004 | OCT 2004 | NOV 2004 | DEC 2004 | JAN 2005 | FEB 2005 | MAR 2005 | APR 2005 | MAY 2005 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| -2140 | *JACKSON, TERRY | | | | | 134.00 | | | 268.00 | | | | | 402.00 |
| | Total Dollars Paid | | | | | 134.00 | | | 268.00 | | | | | 402.00 |
| 1.7500% | | | | | | 2.35 | | | 4.69 | | | | | 7.04 |
| | | | | | | 2.35 | | | 4.69 | | | | | 7.04 |

# Levinson Simon & Sprung, P.C.
## Detail Report
## Report Date: 2/19/2007

SION AND WELFARE FUNDS OF CHICAGO LABORERS
C DEMOLITION, INC.

Case #: ChLab-1206-1212
Contract: CDCA & *CDCA

Year Ended: May, 2006

Contributions computed by Amount per Hour

| SSN | Name | JUN 2006 | JUL 2006 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 52-2140 | *JACKSON, TERRY | | 40.00 | | | | | | | | | | | 40.00 |
| | Total Hours | | 40.00 | | | | | | | | | | | 40.00 |

### e Table

| | | | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LMCC | $0.1200 | | 4.80 | | | | | | | | | | | | 4.80 |
| ET | $0.0500 | | 2.00 | | | | | | | | | | | | 2.00 |
| | | | 6.80 | | | | | | | | | | | | 6.80 |

F-225

**Levinson Simon & Sprung, P.C.**
Detail Report
**Report Date: 2/19/2007**

ION AND WELFARE FUNDS OF CHICAGO LABORERS
DEMOLITION, INC.
Case #: ChLab-1206-1212                    Year Ended: May, 2006
Contact: CDCA & CDCA

Contributions computed as Percentage of Dollars Paid

| SN | Name | JUN 2005 | JUL 2005 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1:2140 | *JACKSON, TERRY | 60.00 | 1,460.00 | 180.00 | 120.00 | 22.62 | | | | | | | | 1,830.00 |
| 2:2900 | *LOPEZ, JOSE | | | | | 22.62 | | | | | | | | 22.62 |
| | Total Dollars Paid | 60.00 | 1,460.00 | 180.00 | 120.00 | 22.62 | | | | | | | | 1,842.62 |
| | | 1.05 | 25.55 | 3.15 | 2.10 | .40 | | | | | | | | 32.25 |
| | 1.750% | 1.05 | 25.55 | 3.15 | 2.10 | .40 | | | | | | | | 32.25 |

**Levinson Simon & Sprung, P.C.**
**Detail Report**
**Report Date: 2/19/2007**

Page 8
Employees

ION AND WELFARE FUNDS OF CHICAGO LABORERS
DEMOLITION, INC.
Case #: ChLab-1206-1212
Contract: CDCA & CDCA

Year Ended: May, 2007

Contributions computed as Percentage of Dollars Paid

| SN | Name | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2-2140 | JACKSON, TERRY | | 160.00 | | | | | | | | | | | 160.00 |
| | Total Dollars Paid | | 180.00 | | | | | | | | | | | 180.00 |
| 1.7500% | | | 2.80 | | | | | | | | | | | 2.80 |
| | | | 2.80 | | | | | | | | | | | 2.80 |